<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
OLATOKUNBO AMUNIKORO,               :
                                    :   Civil Action No. 06-171 (KSH)
            Petitioner,             :
                                    :
        v.                          :        **O P I N I O N**
                                    :
IMMIGRATION AND CUSTOMS             :
ENFORCEMENT,                        :
                                    :
            Respondent.             :
_____:

**APPEARANCES:**

> OLATOKUNBO AMUNIKORO, Petitioner, <u>Pro Se</u>
> A 74-193-228
> Sussex County Jail (KDCF)
> 41 High Street
> Newton, New Jersey 07860
>
> CHRISTOPHER J. CHRISTIE, United States Attorney
> PETER G. O'MALLEY, Assistant U.S. Attorney
> 970 Broad Street, Suite 700
> Newark, New Jersey  07102
> Attorneys for Respondent

**HAYDEN, District Judge**

Petitioner, Olatokunbo Amunikoro ("Amunikoro"), is currently being detained by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE") at the Sussex County Jail in Newton, New Jersey, pending his removal from the United States.  He filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his indefinite detention as unlawful and unconstitutional under <u>Zadvydas v.</u>

<u>Davis</u>, 533 U.S. 678 (2001) and <u>Ngo v. I.N.S.</u>, 192 F.3d 390 (3d Cir. 1999).

The named respondent is the Bureau of Immigration and Customs Enforcement ("ICE").[1]  The Government filed an Answer to the petition on March 13, 2006, with a certified copy of the relevant administrative record.

<u>**BACKGROUND**</u>

Amunikoro is a native and citizen of Nigeria, who has been residing in the United States since April 23, 1988.  He claims to be a permanent resident alien, and his wife and children are United States citizens.  (Petition, ¶ 6).  In September 1995, Amunikoro was convicted of attempted forgery involving a credit card ina New York state court.  He was granted conditional permanent resident status in November 1995, after falsely reporting that he had no criminal convictions.  In March 1997, Amunikoro was again convicted of fraudulent use of a credit card in a New Jersey state court.  Petitioner misrepresented his criminal history, and the conditional status of Amunikoro's

---

[1]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  <u>See</u> Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Bureau of Immigration and Customs Enforcement of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

residency was removed on February 25, 1999.  (Declaration of
Peter G. O'Malley ("O'Malley Decl."), at Exhibit 2 at pp. 2, 3).

In June 2003, as he was returning to the United States from
Nigeria, Amunikoro was placed in removal proceedings as an alien
who was inadmissible by virtue of a conviction for a crime of
moral turpitude under § 212(a)(2)(A)(i)(I) of the Immigration and
Nationality Act ("INA").  Amunikoro applied for discretionary
waiver under former § 212(c) of the INA and § 212(h).
Petitioner's requests were denied by an Immigration Judge ("IJ")
in a decision rendered on July 30, 2004.  Amunikoro appealed to
the Bureau of Immigration Appeals ("BIA") and the BIA summarily
affirmed the IJ's decision on November 23, 2004.  Amunikoro then
filed a petition for review with the Third Circuit.  On March 1,
2005, the Third Circuit dismissed the action for lack of
jurisdiction pursuant to <u>Liang v. INS</u>, 206 F.3d 308 (3d Cir.
2000)(which held that the Court of Appeals lacks jurisdiction to
review on direct appeal final orders of removal of aliens who
have committed certain criminal offenses), <u>cert</u>. <u>denied</u>, 533 U.S.
949 (2001).  (O'Malley Decl. at Ex. 2, at pp. 3, 4).

Thereafter, Amunikoro filed a habeas petition in the Eastern
District of New York, challenging his removal order.  By Opinion
and Order filed on April 5, 2005, the district court denied the
petition and lifted the stay of removal that had been entered in
the matter.  This action preceded the passage of the REAL ID Act

of 2005, which became effective in May 2005, and which divested district courts of jurisdiction to entertain challenges to removal orders.  Amunikoro then appealed to the Second Circuit, which transferred the matter to the Third Circuit where the action is currently pending under docket no. 06-1534, as of this date.  (O'Malley Decl., at Ex. 5).  Although it is not reflected on the docket, a stay of removal has been continued in this matter pending disposition on review in the Third Circuit.  (Respondent's Answer at pg. 3).

On June 3, 2005, the ICE completed a post-order custody review in this matter.  The ICE issued a decision to continue custody subject to further custody reviews because Amunikoro's removal was imminent but held in abeyance due to court-issued stay of removal.  (O'Malley Decl., at Ex. 7).

**DISCUSSION**

A.    **Standard of Review**

Amunikoro seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Here, petitioner challenges his continued detention since February 22, 2005.[2]  He claims that his

---

[2]  Amunikoro alleges that he was arrested by the ICE and taken into custody on February 22, 2005.

indefinite detention is constitutionally impermissible because he has been denied due process guaranteed under the Fifth Amendment, citing to Zadvydas v. Davis, 533 U.S. 678 (2001) and Ngo v. I.N.S., 192 F.3d 390 (3d Cir. 1999).  He further claims that his continuing detention is unlawful because he has not been given a meaningful opportunity to demonstrate that he should not be detained.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Respondent contends that Amunikoro's request for a judicial stay of removal, which was granted by the court, suspended the removal period under 8 U.S.C. § 1231(a)(6).  Rather, § 1231(a)(1)(B)(ii) governs, and provides that an alien may be held beyond the removal period if a stay of removal has been requested and issued by the court.  Respondent also argues that Amunikoro has been afforded procedural due process based on his

post-order custody review in June 2005 and the fact that his next custody review is scheduled for June 2006.

**B.**   **Discussion**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.  However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard.  Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable.  See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

In addition § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during

6

such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."

Here, it appears that the Respondent is arguing that Amunikoro is subject to detention because he has sought for and secured a stay of removal.  It has been held that the six-month presumptively reasonable post-order removal period of <u>Zadvydas</u> is tolled when an alien requests judicial review of a removal order. <u>See</u> <u>Soberanes v. Comfort</u>, 388 F.3d 1305, 1311 (10th Cir. 2004)(detention "directly associated with a judicial review process that has a definite and evidently impending termination point" is "more akin to detention during the administrative review process, which was upheld [by the Supreme Court]")(citing <u>Demore v. Kim</u>, 538 U.S. 510, 527-29 (2003)); <u>Wang v. Ashcroft</u>, 320 F.3d 130, 145-47 (2d Cir. 2003)("where a court issues a stay pending its review of an administrative removal order," the post-order detention provisions of § 1231 do not apply because "the removal period commences on 'the date of the court's final order'"); <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002)(by applying for stay, petitioner interrupted the running of the time under <u>Zadvydas</u>); <u>Evangelista v. Ashcroft</u>, 204 F. Supp.2d 405, 409 (E.D.N.Y. 2002)(petitioner's reliance on <u>Zadvydas</u> to be released from detention is "disingenuous" when sole reason being held is his requested stay of deportation); <u>Hines-Roberts v. Ashcroft</u>, 2003 WL 21305471 at *3 (D. Conn. Jun.

5, 2003)(unpubl.)(as a result of stay of deportation, Attorney General could not seek to bring about petitioner's deportation, and therefore, period of detention does not raise due process issue presented in <u>Zadvydas</u>); <u>Archibald v. INS</u>, 2002 WL 1434391 at *8 (E.D. Pa. July 1, 2002) (unpubl.) (because petitioner asked for and was granted stay of deportation, he is not being held in violation of <u>Zadvydas</u>, but rather held pursuant to stay he requested). <u>See also</u> <u>Abimbola v. Ridge</u>, 2005 WL 588769 *2 (D. Conn. 2005)("a self-inflicted wound cannot be grounds for a <u>Zadvydas</u> claim"); <u>Guang v. INS</u>, 2005 WL 465436 (E.D.N.Y. 2005); <u>Sansui v. INS</u>, 2003 WL 21696945 (E.D.N.Y. 2003), <u>aff'd</u> <u>in</u> <u>part</u>, <u>remanded</u> <u>in</u> <u>part</u>, 100 Fed. Appx. 49 (2d Cir. 2004).

Here, the Respondent confirms that a stay of removal was continued by the Third Circuit with respect to the earlier request made by Amunikoro. This stay of removal remains in effect while Amunikoro's petition for review is pending in the United States Court of Appeals for the Third Circuit. Thus, the Court finds that, as the stay is still in effect, the presumptively-reasonable six-month period has not yet begun to run pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii). Moreover, there is no indication in the record that Amunikoro's removal to Nigeria is not reasonably foreseeable or that travel documents will not be issued once, and if, the stay of removal is lifted. Accordingly, it would appear that Amunikoro's continuing

8

detention complies with the express provision of 8 U.S.C. §
1231(a)(1)(B)(ii).

Nevertheless, the petition may be construed as raising the
argument that the sheer length of Amunikoro's prolonged detention
violates his right to due process under the Fifth Amendment.[3]  In
Oyedeji v. Ashcroft, 332 F. Supp.2d 747 (M.D. Pa. 2004), the
district court noted that the "price for securing a stay of
removal should not be continuing incarceration," and concluded
that the due process clause of the Fifth Amendment requires that
a criminal alien should be afforded an opportunity to be heard on
the question of conditional release pending judicial review of a
final administrative order of removal, the execution of which has
been stayed by judicial order.  See Oyedeji, 332 F. Supp.2d at
753-754; Harrison v. Hogan, 2005 WL 2020711 (M.D. Pa. July 18,

---

[3]  In this regard, the Court notes the parallel to Zadvydas,
which recognized the constitutional implications of prolonged
detention for those aliens subject to a final order of removal.
Realistically, the prolonged confinement of those detainees whose
potentially meritorious challenge to removal is part of a
congested court docket is indistinguishable from the indefinite
detention of those aliens whose native countries refuse
repatriation.  Furthermore, this concern for an unjustified
continuing detention for those aliens pending administrative
removal proceedings was discussed by Justice Kennedy in his
concurring opinion in DeMore v. Kim, 538 U.S. 510, 523 (2003).
The Supreme Court stressed that mandatory detention of aliens
pending their administrative removal proceedings was justified
only "for the brief period necessary for their removal
proceedings."  538 U.S. at 513.  However, Justice Kennedy
recognized that lawful permanent resident aliens "could be
entitled to an individualized determination as to his risk of
flight and dangerousness if the continued detention became
unreasonable or unjustified."  Id. at 523.

2005); <u>Haynes v. Department of Homeland Security</u>, 2005 WL 1606321
(M.D. Pa. July 8, 2005).  The court's opinion in <u>Oyedeji</u> is the
minority view given the overwhelming majority of courts
determining to the contrary.  <u>See</u> this Court's Opinion, <u>supra</u>, at
pp. 8-9 (citing cases).

 However, Amunikoro relies on the Third Circuit decision in
<u>Ngo v. I.N.S.</u>, 192 F.3d 390, 398 (3d Cir. 1994), which held that

> [w]hen detention [of an alien] is prolonged, special care
> must be exercised so that the confinement does not continue
> beyond the time when the original justifications for custody
> are no longer tenable.  The fact that some aliens posed a
> risk of flight in the past does not mean they will forever
> fall into that category.  Similarly, presenting danger to
> the community at one point by committing crime does not
> place them forever beyond redemption.

<u>Ngo v. INS</u>, 192 F.3d 390, 398 (3d Cir. 1994).  The fact that a
stay of removal has been issued in this case should not change
this result.  <u>See Ly v. Hansen</u>, 351 F.3d 263, 272 (6th Cir.
2003)(an alien not normally subject to indefinite detention as in
<u>Zadvydas</u> should not be detained simply because he seeks avenues
of relief legally available to him; while the alien may be
responsible for seeking a stay of removal, he is not responsible
for the length of time such determinations may take); <u>Oyedeji</u>,
332 F. Supp.2d at 753 (the price for securing a stay of removal
should not be indefinite detention).

 Thus, assuming that Amunikoro, even as an inadmissible
alien, is protected by the Fifth Amendment's Due Process Clause,
this Court must next determine the review to which Amunikoro is

10

entitled with respect to conditional release.  The Third
Circuit's decision in Ngo provides relevant instruction in this
regard as to the rules governing post-order custody reviews, now
set forth in 8 C.F.R. § 241.4(i).[4]  The rules specified the
following: (1) advance written notice to alien of an opportunity
to present information supporting release; (2) right to
representation at the review; (3) right to an annual personal
interview; (4) written explanations for a custody decision must

---

[4]  The rules evaluated by the Third Circuit in Ngo are no
longer in force, but seven elements listed by the court offer
guiding principles by which to measure the current review
procedures now in effect at 8 C.F.R. § 241.4.  For instance,
under 8 C.F.R. § 241.4(i), the Director of the Headquarters Post-
Order Detention Unit ("HQPDU") is required to designate a two-
person panel to make recommendations on whether an alien should
be released or detained.  This recommendation must be unanimous.
The initial review, and at the beginning of subsequent reviews,
the review panel examines the alien's records.  If the panel does
not recommend release, or if the HQPDU Director rejects a
recommendation for release, the alien shall be personally
interviewed by the review panel.  The alien may have a
representative at this interview, subject to reasonable security
concerns, and he may submit any information he believes may be
pertinent in securing his release.

Under 8 C.F.R. § 241.4(d), an alien may obtain a conditional
release from detention by showing that his release will not pose
a significant risk of flight and danger to the community, to the
safety of others or to property pending removal.  Under 8 C.F.R.
§ 241.4(e), an alien is eligible for release if th review panel
or the HQPDU Director find that the following criteria are met:
(1) travel documents are not available or immediate removal is
otherwise not practicable or not in the public interest; (2) the
alien is presently a non-violent person; (3) the alien is likely
to remain non-violent if released; (4) the alien is not likely to
pose a threat to the community if released; (5) the alien is not
likely to violate the conditions of release; and (6) the alien
does not pose a significant flight risk if released.

be provided; (5) an opportunity for administrative review must be given; (6) custody reviews should occur every six months; and (7) a refusal to presume continued detention based on criminal history.  Ngo, 192 F.3d at 399.  The Third Circuit held that these provisions, if conscientiously applied, gave reasonable assurance of fair consideration of a petitioner's application for conditional release pending removal.  Id.

Here, the administrative record shows that Amunikoro did receive a custody review in June 2005, consisting of an examination of petitioner's file and information that petitioner submitted to the BICE reviewing officials.  (O'Malley Decl., Ex. 7).  A written Decision to Continue Detention was dated June 3, 2005 and sent to petitioner.  The decision states:

> You are not being released because: your removal from the United States is imminent.  ICE is in possession of your travel document.  However, the EDNY has granted a Stay of Removal in this case, pending adjudication of your Habeas Corpus Petition.  This stay precludes ICE from enforcing your departure from the United States at this time

(Id.).  Another custody review is imminent, scheduled for June 2006.

Thus, having carefully reviewed the record, the Court finds that Amunikoro is not entitled to any greater custody reviews than that which the BICE has already provided him.  Amunikoro received a custody review in which he was considered for conditional release.  There is no indication that Amunikoro's removal to Nigeria will not be expeditiously accomplished once

the judicial stay of removal is lifted.  In fact, the record shows that petitioner's travel document is in order and petitioner is ready for removal once the stay is lifted. Amunikoro is also guaranteed another custody review which is scheduled to occur in June 2006.  Finally, the Court is not inclined to find the ICE decision to continue custody to be anything other than an individualized determination of Amunikoro's status, based on his particular circumstances, namely possession of travel documents and imminent removal once the stay is lifted.

Accordingly, the Court concludes that Amunikoro's continued detention is statutorily permissible under 8 U.S.C. § 1231(a)(1)(B)(ii), because his removal period has not yet commenced.  Moreover, Amunikoro's continued detention does not violate due process and is not constitutionally impermissible at this juncture because he has been afforded an individualized custody review.  Therefore, the petition will be denied without prejudice to allow Amunikoro the opportunity to reassert his claims regarding continued detention if the ICE does not provide adequate due process in the future.

## CONCLUSION

For the reasons set forth above, this petition will be denied, without prejudice to Amunikoro bringing a new petition if the Government fails to provide him an adequate custody review in

13

the future that comports with the due process principles set forth in this Opinion.  An appropriate order follows.


/s/ Katharine S. Hayden
_____
KATHARINE S. HAYDEN
United States District Judge

Dated:  May 31, 2006